IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:20-cv-00652-M

| | | |
|---|---|---|
| CYNTHIA FAYE COON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **OPINION** |
| REX HOSPITAL, INC.; ROSE | ) | **AND ORDER** |
| ACKERMAN; STEPHEN RINALDI; ERIN | ) | |
| MORGAN-GUNTER; HANNA KIMAK; | ) | |
| CANDACE GLASS; EMILIE A. HENDEE; | ) | |
| and PETER M. VARNEY, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), filed February 26, 2021. [DE-22] For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

## I.     Background

Within her December 3, 2020 complaint, Plaintiff alleges that she worked for Defendant Rex Hospital, Inc. ("Rex") from 2016 to 2019, and brings causes of action against Rex and certain individuals purportedly associated with Rex alleging employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (the "ADA"). [*see generally* DE-1]

Defendants moved to dismiss the complaint on February 26, 2021. [DE-22] The motion has been fully briefed and is ripe for adjudication. [DE-23; DE-30; DE-31]

1

## II.     Legal standard

The Federal Rules of Civil Procedure (hereinafter, the "Rules") require a pleading to contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).  A defendant against whom a claim has been brought can challenge the claim's sufficiency under Rule 8 by moving the court to dismiss the claim for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

To survive a Rule 12(b)(6) motion, a plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  *Twombly*'s plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56.  A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79  ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the

2

complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

## III. Analysis

Within their memorandum of law in support of their motion, Defendants argue that: (1) neither Title VII nor the ADA permit lawsuits against individuals who are not the plaintiff's employer; (2) Plaintiff's claims were not timely filed; and (3) each individual claim fails under Rule 12(b)(6) for various reasons. [DE-23] The court will address each argument in turn.

### a. *Claims against the individual Defendants*

The Fourth Circuit has made clear that claims cannot be brought under Title VII or the ADA against individuals who are not alleged to have been the plaintiff's "employer" within the meaning of Title VII:

> We have expressly held that Title VII does not provide a remedy against individual defendants who do not qualify as "employers." Because Title VII does not authorize a remedy against individuals for violation of its provisions, and because Congress has made the remedies available in Title VII applicable to ADA actions, the ADA does not permit an action against individual defendants for retaliation for conduct protected by the ADA.

*Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) (internal citation omitted); *see Shiflett v. GE Fanuc Automation Corp.*, No. 97-1687, 1998 U.S. App. LEXIS 13186, at *16 (4th Cir. June 19, 1998) (unpublished) (affirming dismissal of ADA discrimination claims against individuals); 42 U.S.C. § 2000e(b) (defining "employer"). Because Plaintiff does not allege that she was employed by any Defendant other than Rex, the claims against all other Defendants must be dismissed for failure to state a claim.

### b. *Timeliness*

A plaintiff may only bring a claim under Title VII or ADA Title I after exhausting her administrative remedies and receiving a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"). *See* 42 U.S.C. § 2000e-5 (Title VII procedures); 42 U.S.C. § 12117(a) (ADA Title I procedures

3

the same as set forth within Title VII, specifically including 42 U.S.C. § 2000e-5). Once the EEOC right-to-sue letter has been received, a plaintiff may bring a claim in federal court "within ninety days[.]" 42 U.S.C. § 2000e-5(f)(1). When the date that the plaintiff received the letter is unknown or disputed, Fourth Circuit courts apply a rebuttable presumption that the letter was received three days after it was mailed. *See Nguyen v. Inova Alexandria Hosp.*, No. 98-2215, 1999 U.S. App. LEXIS 17978, at *7–9 (4th Cir. July 30, 1999) (unpublished). But "if the actual date of receipt is confirmed by evidence, that date governs." *Id.* at *8.

The complaint does not contain specific allegations regarding a right-to-sue letter, alleging only that "Plaintiff timely filed charges of discrimination with" the EEOC and that "Plaintiff have [sic] timely filed this action and have [sic] complied with all administrative prerequisites to bring this lawsuit." [DE-1 ¶¶ 12–13] But Rex[1] attaches the right-to-sue letter EEOC sent to Plaintiff to their initial brief, and the letter is date-stamped August 31, 2020. [DE-23-2] Plaintiff attaches the same document in response to Rex's motion [DE-29-5] and does not dispute that the letter was mailed on August 31, 2020, but argues that her complaint was timely filed because she did not actually receive the letter until September 6, 2020. [DE-30 at 2] Plaintiff also attaches a September 8, 2020 email from Plaintiff in which she states that she received the right-to-sue letter "by mail on September 6, 2020[.]" [DE-29-2 at 16]

The Fourth Circuit has said:

> Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the documents attached or incorporated into the complaint. Consideration of extrinsic documents by a court during the pleading stage of litigation improperly converts the motion to dismiss into a motion for summary

---

[1] Because Plaintiff's claims against all other Defendants have been dismissed, the court will hereinafter refer to Defendants' arguments as Rex's arguments.

4

judgment. This conversion is not appropriate when the parties have not had an opportunity to conduct reasonable discovery.

Courts therefore should focus their inquiry on the sufficiency of the facts relied upon by the plaintiffs in the complaint. Consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity.

*Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (internal quotation marks and citations omitted). "In the employment discrimination context, a court may consider an EEOC charge and other EEOC documentation because such documents are integral to the complaint as plaintiff necessarily relies on these documents to satisfy the time limit requirements of the statutory scheme." *Williams v. 1199 Seiu United Healthcare Workers E.*, Civil Action No. WMN-12-72, 2012 U.S. Dist. LEXIS 98965, at *2 n.1 (D. Md. July 17, 2012) (citing *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565–66 (2nd Cir. 2006)). Given this authority and the fact that both Plaintiff and Rex have attached the same EEOC right-to-sue letter to their papers [DE-29-5], the court concludes that it is properly considered at this stage.

As Rex argues, because the right-to-sue letter was mailed on August 31, 2020, and the complaint does not allege when she received the letter, there is a rebuttable presumption that Plaintiff received it on September 3, 2020. *Nguyen*, 1999 U.S. App. LEXIS 17978 at *7–9. In rebuttal, however, Plaintiff claims that she did not receive the letter until September 6, 2020, and attaches the September 8, 2020 email in which she appears to have told her lawyer the same. [DE-29-2 at 16] Presuming that it is authentic, Plaintiff's September 8, 2020 email tends to show that Plaintiff told someone that she received the right-to-sue letter on September 6, 2020 at a time when, by virtue of the months remaining on her limitations period, she had no reason to lie about that fact. The email therefore could be evidence sufficient to overcome the *Nguyen* presumption. 1999 U.S. App. LEXIS 17978 at *8.

5

Rex argues that Plaintiff's allegation of the September 6, 2020 receipt date and invocation of extrinsic evidence within her opposition brief comprise an improper attempt to amend her pleading with her brief. [DE-31 at 1–2] And it is true that a ruling based upon Plaintiff's proffered evidence at this stage would amount to an improper Rule 56 summary-judgment ruling. *See* Fed. R. Civ. P. 12(d); *Zak*, *supra*.

But Rex asks the court to dismiss a *pro se* litigant's pleading for failure to allege the factual specifics regarding her purported compliance with Title VII and the ADA's administrative regimes. The court's independent research uncovered an opinion in which another district court in this circuit denied a motion to dismiss a represented plaintiff's complaint when it was attacked at the pleading stage for failure to plead facts tending to show compliance with Title VII and the ADA's administrative regimes. *See Brown v. City of Balt. DOT*, Civil No. RDB 08-2549, 2009 U.S. Dist. LEXIS 153667, at *6–7 (D. Md. May 5, 2009) (denying motion to dismiss Title VII and ADA claims for failure to allege the date the right-to-sue letter was mailed or received). Rather than dismiss the complaint, the *Brown* court granted the plaintiff leave to amend his complaint to plead facts demonstrating compliance, and deferred adjudication of the timeliness issue until the parties could conduct discovery of the relevant facts and the plaintiff could file supporting affidavits. *Id.* And in *Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir. 1985), the Fourth Circuit recognized that *pro se* litigants have an "untutored hand requiring special judicial solicitude" and said that *pro se* "litigants with meritorious claims should not be tripped up in court on technical niceties." *Id.* at 1277–78. *Beaudett* therefore makes clear that *pro se* litigants should not be held to a higher standard than parties represented by counsel, like the plaintiff in *Brown*.

Accordingly, the court follows *Brown* and *Beaudett* in concluding that dismissing Plaintiff's complaint for failure to allege the specifics of her alleged timeliness is not warranted at this juncture, and rejects Rex's Rule 12(b)(6) timeliness argument. Plaintiff will be granted leave to file an amended complaint alleging the specifics of how she complied with Title VII and the ADA's administrative

6

requirements, including the date that she received the right-to-sue letter, as well as to file affidavits in support. *See* Fed. R. Civ. P. 15(a)(2). If, following discovery, Rex wishes to raise the timeliness issue in a motion for summary judgment or at trial, the issue will be adjudicated at that time.

c. *Count One/Title VII discrimination by failure to investigate*

Plaintiff's first claim for relief alleges that Rex violated Title VII's antidiscrimination provision, 42 U.S.C. § 2000e-2(a), by its "failure to investigate allegations of discrimination[.]" [DE-1 ¶¶ 85–89]

"Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). "[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss . . . factual allegations must be enough to raise a right to relief above the speculative level" within the meaning of *Twombly*. *Id.* (internal quotation marks and brackets omitted) (citing *Twombly*, 550 U.S. at 555 and *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002)).

Rex argues that Count One must be dismissed because a failure to investigate is not "adverse employment action" within the meaning of Title VII's antidiscrimination provision. [DE-23 at 7–8] For purposes of 42 U.S.C. § 2000e-2(a), "[a]n adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation marks, brackets, and citations omitted). Rex invokes authority from this circuit holding that a 42 U.S.C. § 2000e-2(a) claim based upon an allegation that an employer discriminatorily failed to investigate a plaintiff's complaints must be dismissed because a failure to investigate does not constitute "adverse employment action" that tangibly affects the plaintiff's employment. [*see* DE-7–8 (citing, e.g., *Westmoreland v. Prince George's Cnty.*, 876 F. Supp. 2d 594, 605

7

(D. Md. 2012) (rejecting argument that "an employer's failure to investigate an alleged leak of purportedly private information constitutes an adverse employment action" because "a 'failure' of this sort does not tangibly affect the conditions of an employee's employment"), and *Burke v. CHS Middle E., LLC*, No. 1:18-cv-01605-LO-JFA, 2019 U.S. Dist. LEXIS 19189, at *7–8 (E.D. Va. Feb. 4, 2019) ("failure to investigate and respond to discrimination complaints does not constitute 'adverse action'"). Plaintiff does not respond with any countervailing authority within her opposition brief, and the court's independent research has uncovered other authority that supports Rex's argument. *See Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (in retaliation context, "[a]n employee whose complaint is not investigated cannot be said to have thereby suffered a punishment for bringing that same complaint: Her situation in the wake of her having made the complaint is the same as it would have been had she not brought the complaint or had the complaint been investigated but denied for good reason or for none at all"); *Daniels v. UPS*, 701 F.3d 620, 640 (10th Cir. 2012) (in retaliation context, "a failure to investigate a complaint, unless it leads to demonstrable harm, leaves an employee no worse off than before the complaint was filed" (citing *Fincher*)); *Ray v. Int'l Paper Co.*, 909 F.3d 661, 670 (4th Cir. 2018) (noting that the "standard for establishing an adverse employment action under Title VII's antiretaliation provision is more expansive than the standard for demonstrating a tangible employment action under the statute's antidiscrimination provisions[.]" (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).[2] The court therefore concludes that Count One fails to state a claim and must be dismissed pursuant to Rule 12(b)(6).[3]

---

[2] *See infra* Section III(e) (discussing different standards for "adverse employment action").

[3] Even were failure to investigate actionable under 42 U.S.C. § 2000e-2(a), Count One would fail for the same reasons Count Two does discussed below in Section III(d), i.e., for failing to properly exhaust administrative remedies by timely filing an EEOC charge specifying the alleged failure to investigate. Plaintiff alleges that she made no discrimination complaints after October 2018 [DE-1 ¶ 63], but she did not file her EEOC charge until January 2020 [DE-23-1], and the EEOC charge is silent regarding any purported failure to investigate her complaints.

8

*d. Count Two/Title VII hostile work environment*

Plaintiff's second claim for relief alleges a violation of 42 U.S.C. § 2000e-2(a) because Rex "agents and employees Lili [Willard] and Kelly [Urbonas]" harassed her because she is African-American and thereby created a hostile work environment. [DE-1 ¶¶ 90–102; DE-30 at 4–5]

As mentioned above, a plaintiff may only bring a private cause of action alleging a violation of Title VII if she has first properly pursued and exhausted her administrative remedies. *See* 42 U.S.C. § 2000e-5 (Title VII procedures); *Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 406 (4th Cir. 2013) ("An employee seeking redress for discrimination cannot file suit until she has exhausted the administrative process."). 42 U.S.C. § 2000e-5(e)(1) sets forth that, to initiate the administrative process, a would-be litigant "shall [] file[]" a charge with the EEOC specifying the alleged discrimination "within one hundred and eighty days after the alleged unlawful employment practice occur[s]."[4] If a would-be litigant fails to file an EEOC charge within 180 days after the alleged discrimination, a claim based upon that discrimination generally may not be brought thereafter in federal court. *See AMTRAK v. Morgan*, 536 U.S. 101, 110 (2002) ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it.").

Rex argues that Count Two must be dismissed because no charge based upon Plaintiff's allegations regarding a hostile work environment was timely filed with the EEOC. [DE-23 at 8–9] As discussed, the court may consider EEOC documentation at this stage, *Williams*, 2012 U.S. Dist. LEXIS 98965 at *2 n.1, and Rex has attached Plaintiff's January 9, 2020 EEOC charge to its initial brief. [DE-23-1] Accordingly,

---

[4] Where "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto[,]" the charge-filing period is 300 days after the alleged unlawful employment practice occurs or 30 days after receiving notice of the termination of such proceedings. 42 U.S.C. § 2000e-5(e)(1). Plaintiff has not alleged that she has instituted any such proceedings elsewhere, so the 180-day period governs her case.

the relevant discriminatory acts must have taken place within the 180 days prior to the EEOC charge, i.e., on or after July 13, 2019, or else Title VII claims based upon those discriminatory acts fail as a matter of law. *AMTRAK*, *supra*.

Rex argues that neither Willard nor Urbonas are alleged to have harassed Plaintiff after Plaintiff allegedly reported Urbonas to her supervisors in October 2018. [DE-23 at 9] Plaintiff does not direct the court's attention to any allegations regarding post-October 2018 harassment by Willard or Urbonas within her opposition brief, and the complaint itself alleges that after October 2018 she "did not make any subsequent complaints about Ms. Urbonas or any other employee regarding 'harassment' or any other disparaging remarks." [DE-1 ¶ 63] Because all of the allegations relevant to Plaintiff's hostile-work-environment claim predate the July 13, 2019 cutoff date, the court concludes that Plaintiff did not properly exhaust her administrative remedies as to that claim, and that Count Two must accordingly be dismissed pursuant to Rule 12(b)(6). *See Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1850 (2019) (holding that 42 U.S.C. § 2000e-5's charge-filing requirement is not jurisdictional).

e. *Count Three/Title VII retaliation*

Plaintiff's third claim for relief alleges that Rex violated Title VII's antiretaliation provision, 42 U.S.C. § 2000e-3(a), because "Plaintiff made informal and formal complaints" and Rex's "agents and employees took materially adverse actions against Plaintiff, including, but not limited to, issuing disciplinary actions, action plans, false threats of poor performance in action plans, [and] failing to investigate Plaintiffs [sic] complaints" as a result. [DE-1 ¶¶ 103–07]

"The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190.

10

Rex argues that Count Three must be dismissed because: (1) no alleged actions by Rex's agents or employees constitute "adverse employment action" within the meaning of Title VII's antiretaliation provision; and (2) Plaintiff has not sufficiently alleged that such actions were caused by Plaintiff's complaints. [DE-23 at 9–11]

First, Plaintiff's allegation regarding "false threats of poor performance in action plans" is not supported by any alleged factual detail allowing the court (or Rex) to respond to it, meaning that it is implausible. *See Francis*, 588 F.3d at 193 ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

Second, as discussed above, an employer's failure to investigate its employee's discrimination complaints does not constitute "adverse employment action" for purposes of Title VII's antidiscrimination provision. *See supra* Section III(c). And while as discussed below, the "standard for establishing an adverse employment action under Title VII's antiretaliation provision is more expansive than the standard for demonstrating a tangible employment action under the statute's antidiscrimination provisions[,]" *Ray*, 909 F.3d at 670, other circuit courts have held that a failure to investigate can only be actionable under Title VII's antiretaliation provision if the failure is allegedly "in retaliation for some separate, protected act by the plaintiff." *Fincher*, 604 F.3d at 721–22. Put another way, a failure to investigate cannot qualify as 42 U.S.C. § 2000e-3(a) retaliation where the purported protected activity allegedly causing the retaliation is the complaint which was not investigated. Because Plaintiff has not alleged any separate protected activity that caused Rex to fail to investigate her complaints, Plaintiff's allegations regarding Rex's purported failure to investigate her discrimination complaints fails to state a claim for Title VII retaliation.

That leaves the "disciplinary actions" and "action plans[,]" which appear to concern the same alleged activity. [*see* DE-1 ¶¶ 73–75 (complaint's only details regarding disciplinary action and action

11

plans alleged together); DE-30 at 9 (only mention of either terms: "Plaintiff allege [sic] she was given a Disciplinary action, and action plans that stated she is to report to work 5 days a week for 30 days")]

Rex invokes a Fifth Circuit opinion, *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818 (5th Cir. 2019), in which that court said that "[a]n employer's decision to place an employee on a performance improvement plan is not an adverse employment action." *Id.* at 824. And the court agrees that Plaintiff's alleged action plan is fairly characterized as a performance-improvement plan. [*see* DE-1 ¶¶ 72–73 (alleging that Plaintiff's supervisor put her on the action plan because, *inter alia*, she was not "completing . . . performance goals")] But the above-quoted language from *Welsh* came within a section of the opinion in which the panel was discussing a "discrimination claim"—i.e., a claim brought under 42 U.S.C. § 2000e-2. *Id.* at 823; *see James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 n.2 (4th Cir. 2004) (distinguishing "the anti-retaliation provision of Title VII, [] 42 U.S.C. § 2000e-3," from "the employment discrimination provision in 42 U.S.C. § 2000e-2"). Later in the opinion, the *Welsh* panel noted that the definition of "adverse employment action" for purposes of "Title VII's anti-retaliation provision"—i.e., 42 U.S.C. § 2000e-3, *see James, supra*—is different than the definition of "adverse employment action" for purposes of a discrimination claim:

> For purposes of Title VII's anti-retaliation provision, the Supreme Court has held that an adverse employment action is defined slightly more broadly than the term is defined in the employment discrimination context. Specifically, a plaintiff seeking to establish a retaliatory adverse employment action "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

*Id.* at 827–28 (quoting *Burlington*, 548 U.S. at 67–68). The *Welsh* panel also expressly left open the question of whether placing an employee on a performance-improvement plan could constitute "adverse employment action" for purposes of a retaliation claim because it concluded that the plaintiff had failed to establish the third element of causation. *Id.* at 827–28 ("[E]ven if [placing the employee on the

12

performance-improvement plan] were a retaliatory adverse employment action (and we do not hold that it is), the extended gap between the protected activity and the [performance-improvement plan] severs the causal nexus between the two in the absence of evidence to the contrary."). Rex also invokes the Sixth Circuit's decision in *White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008), but that is a retaliation case, too. Rex's reliance upon *Welsh* and *White* is therefore misguided.

The court has conducted its own independent research and has found no Fourth Circuit opinion squarely addressing whether placing an employee on a performance-improvement plan like Plaintiff's constitutes "adverse employment action" for purposes of a Title VII retaliation claim in circumstances like these. The question facing the court is whether Plaintiff's action plan would have been found "materially adverse" to a reasonable employee, i.e., whether the action plan was "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 57; *see Laird v. Fairfax Cnty.*, 978 F.3d 887, 893 (4th Cir. 2020) (noting that "the harm must be a significant detriment, not relatively insubstantial or trivial" (internal quotation marks, emphasis, and citations omitted)). Plaintiff alleges that the action plan, among other things, eliminated her ability to work remotely when she had told Rex that she needed to "avoid night driving because she had night blindness[.]" [DE-1 ¶¶ 68, 73–75] Because the court concludes that a reasonable worker with night blindness might be dissuaded from raising a discrimination complaint if they knew that they might lose remote-working privileges and thereafter have to risk driving blind as a result, the court concludes that the action plan is a plausible allegation of an "adverse employment action" within the meaning of *Burlington*. *See Walker v. Md. Dep't of Info. & Tech.*, Civil Action No. CCB-20-219, 2020 U.S. Dist. LEXIS 204142, at *14–15 (D. Md. Nov. 2, 2020) (denying motion to dismiss Title VII retaliation claim: "At this stage, the court accepts that it is plausible that the denial of telework is a materially adverse employment action capable of deterring

13

a reasonable employee from making a charge of discrimination."). Rex's first argument is accordingly rejected.

Regarding causation, all but one of the cases invoked by Rex concern summary judgment, where the question is whether the plaintiff has evidence tending to demonstrate a causal link between the protected activity and the allegedly-retaliatory "adverse employment action." *E.g.*, *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (affirming summary judgment where plaintiff's only evidence of causation was a 20-month gap between the activity and the employment action). At the motion-to-dismiss stage, by contrast, the question is merely whether a causal link is plausible. Here, Plaintiff has alleged that she made discrimination-based complaints in October 2018 and that the action plan was put into place in August 2019.[5] While this 9–10-month gap strains the reasonableness of the inference that the action plan was caused by the complaints, other courts have found longer gaps to be potentially actionable under Title VII, albeit in different circumstances. *See Templeton v. First Tenn. Bank, N.A.*, 424 F. App'x 249, 251 (4th Cir. 2011) (unpublished) (vacating district-court order granting motion to dismiss retaliation claim based upon alleged "adverse employment action" that took place two years after the alleged protected activity because "it is at least plausible that Defendants' refusal to rehire [the plaintiff] in 2008 was causally-related to [the plaintiff]'s previous harassment complaint"). Rex also mischaracterizes the lone pleading-stage case that it invokes. [*compare* DE-23 at 11 (characterizing *German v. Akal Sec., Inc.*, No. CCB-11-1242, 2011 U.S. Dist. LEXIS 136470 (D. Md. Nov. 29, 2011) as "dismissing claim under Rule 12(b)(6) because four-month gap was 'too long to provide a causal link between the two actions'"), *with German*, 2011 U.S. Dist. LEXIS 136470 at *18–19 (granting leave to amend retaliation claim because of unspecific pleading after noting

---

[5] While Plaintiff describes multiple "telecommuting agreements" within her opposition brief [DE-30 at 8], the complaint only describes an action plan put in place in August 2019 [DE-1 ¶¶ 71–77]. Should Plaintiff wish to add allegations regarding other action plans, she may move to amend her complaint under Federal Rule of Civil Procedure 15(a)(2).

14

that "[u]nless she can provide more specific facts or dates, German's retaliation claim must also be dismissed[,]" and noting that a "four-month gap *may* be too long to provide a causal link between" the alleged protected activity and retaliation (emphasis added))]  Because Rex does not invoke any case in which a retaliation claim was dismissed at the pleading stage because the temporal proximity between the alleged protected activity and retaliation was 9 months or fewer, the court concludes that it is at least plausible that Plaintiff's alleged discrimination complaints were causally related to Rex's purported decision to put Plaintiff on the action plan, and rejects Rex's temporal-proximity argument.

Because the court rejects both of Rex's arguments in support of its motion to dismiss Plaintiff's retaliation claim, Count Three will not be dismissed at this time.

### f. Count Four/ADA failure to accommodate

Plaintiff's fourth claim for relief alleges a violation of the ADA because: (1) Plaintiff had (a) Post-Traumatic Stress Disorder ("PTSD"), (b) Episodic Mood Disorder ("EMD"), and (c) night blindness; (2) Rex knew that Plaintiff had PTSD and EMD;[6] and (3) Plaintiff "was denied the opportunity to alter her schedule to accommodate her education schedule, she was denied a work schedule that would accommodate her PTSD and night blindness, [and] she was denied work from home privileges." [DE-1 ¶¶ 103–08]

The Fourth Circuit has said:

> [I]n order for a plaintiff to establish a prima facie case against his employer for failure to accommodate under the ADA, the plaintiff must show[7]: (1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he

---

[6] Count Four also incorporates by reference the prior paragraphs of the complaint, including Plaintiff's allegation that she told her supervisors at Rex that she needed to "avoid night driving because she had night blindness[.]" [DE-1 ¶ 68]

[7] As with Title VII claims, a plaintiff need only plausibly allege the elements of a prima facie ADA claim in order to withstand a Rule 12(b)(6) motion to dismiss. *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 751 (4th Cir. 2018) ("Although plaintiffs need not prove their prima facie case at the pleading stage, they must allege facts sufficient to state all the elements of their claim" (internal quotation marks, brackets, and citations omitted)).

could perform the essential functions of the position; and (4) that the employer refused to make such accommodation.

*Wirtes v. City of Newport News*, 996 F.3d 234, 238–39 (4th Cir. 2021) (internal quotation marks and citations omitted).

Rex argues that Count Four must be dismissed because: (1) Plaintiff's alleged conditions are not qualifying disabilities under the ADA; and (2) the accommodations Plaintiff allegedly sought were not reasonably necessary to facilitate her work. [DE-23 at 11–14]

The ADA sets forth that an individual has a "disability[,]" *inter alia*, if she has "a physical or mental impairment that substantially limits one or more [of her] major life activities[.]" 42 U.S.C. § 12102(1)(A). In order to properly allege a disability under the ADA, then, a plaintiff must allege: "(1) that he has a physical or mental impairment, (2) that this impairment implicates at least one major life activity, and (3) that the limitation is substantial." *Wicomico*, 910 F.3d at 751 (quotation marks and citation omitted).

First of all, extraprofessional demands on an individual's time, like Plaintiff's alleged "education schedule[,]" are not disabilities within the meaning of the ADA, and do not themselves require an employer to make any accommodations to an employee. And second, beyond a generalized allegation that she had "symptoms" and sickness" at times [DE-1 ¶ 68], Plaintiff pleads nothing whatsoever regarding how PTSD and EMD affected her life or any of her major life activities, and the court is unable to reasonably infer any substantial limit to a major life activity from such unspecific allegations. *See Francis*, 588 F.3d at 193 ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

16

The court therefore agrees with Rex that these allegations fail to plausibly allege a disability within the meaning of the ADA.

The court is unpersuaded, however, by Rex's argument that Plaintiff's alleged night blindness cannot qualify as a disability for ADA purposes as a matter of law. As a threshold matter, the court can reasonably infer from Plaintiff's allegation that she told Rex that she needed to "avoid night driving because she had night blindness" [DE-1 ¶ 68] that Plaintiff's night blindness is alleged to have substantially affected her ability to see while driving at night and thereby to safely commute to or from her workplace. "[S]eeing" is one of the major life activities expressly laid out by Congress within the ADA, 42 U.S.C. § 12102(2)(A), and it is plausible that Plaintiff's purported night blindness amounts to a physical impairment that substantially limits her ability to see. *See Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 256 (4th Cir. 2006) ("the major life activity of seeing . . . is always substantially limited by blindness"). Moreover, as noted by one of the cases invoked by Rex, even if driving is not itself a major life activity, "an inability to drive may still create a disability if it impairs an activity separately recognized as a major life activity." *Morey v. McDonald's Corp.*, Case No. 18 C 1137, 2020 U.S. Dist. LEXIS 87686, at *8 (N.D. Ill. May 19, 2020). "[W]orking" is another of the major life activities expressly laid out by Congress within the ADA, 42 U.S.C. § 12102(2)(A), and if Plaintiff can show that her night blindness impaired her ability to safely commute to work, it could qualify as a disability for purposes of an ADA failure-to-accommodate claim. Finally, as elsewhere within its briefing, the cases Rex cites in support of its argument concern summary judgment. [DE-23 at 12–13] While Plaintiff will be required to develop evidence in discovery showing that her purported night blindness qualifies as a disability within the meaning of the ADA, the court will not conclude at this early stage that it cannot qualify as a matter of law. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 59–60 (2d Cir. 2005) (reversing grant of summary judgment to defendant because question of whether plaintiff's night blindness qualified as a disability under the ADA required an "individualized

17

assessment" "on a case-by-case basis"). The court accordingly concludes that, by alleging her night blindness, Plaintiff has plausibly alleged a disability within the meaning of the ADA.

Rex's second argument—that Count Four fails because "Plaintiff does not plausibly allege that a telework accommodation was necessary" [DE-23 at 13–14]—fails for two reasons. First, *Wirtes* does not require an ADA claimant to plausibly allege that an accommodation was "necessary[.]" *Wirtes* requires an ADA claimant to plausibly allege "that with reasonable accommodation he could perform the essential functions of the position[.]" 996 F.3d at 239. In relevant part, federal regulations define "reasonable accommodation" as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held . . . is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position[.]" 29 C.F.R. § 1630.2(o)(1)(ii); *see Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 580 (4th Cir. 2015) ("A reasonable accommodation is one that 'enables [a qualified] individual with a disability . . . to perform the essential functions of [a] position.'" (quoting 29 C.F.R. § 1630.2(o)(1)(ii)). Plaintiff has alleged that: (1) in December 2017 and October 2018, she requested that Rex accommodate her night blindness and corresponding need to "avoid night driving"; and (2) prior to the August 2019 action plan, Rex accommodated her by allowing her to work remotely for the better part of a year. [DE-1 ¶¶ 68–76] In light of: (1) the fact that the court must draw all reasonable inferences in the plaintiff's favor when ruling on a Rule 12(b)(6) motion, *Hall*, 846 F.3d at 765; and (2) the "special judicial solicitude" that the court must accord *pro se* litigants, *Beaudett*, 775 F.2d at 1277–78, the court concludes that these contentions collectively comprise a plausible allegation of a reasonable accommodation within the meaning of 29 C.F.R.

§ 1630.2(o)(1)(ii) and *Jacobs*, and that Plaintiff has therefore satisfied the third element of *Wirtes*.[8] Rex's second argument is accordingly rejected, and Plaintiff will be given the opportunity to develop facts relevant to her night-blindness-based ADA failure-to-accommodate theory in discovery.

### g. *Count Five/Title VII discrimination by wrongful termination*

Plaintiff's fifth and final claim for relief alleges a violation of Title VII's antidiscrimination provision, 42 U.S.C. § 2000e-2(a), because Rex "[w]rongful[ly] [t]erminat[ed]" her by "for[cing] her to resign[.]" [DE-1 ¶¶ 109–10] Plaintiff alleges that "her employment was terminated based on her race, and her actions to oppose discrimination."[9] [DE-1 ¶ 109] Plaintiff's fifth claim therefore pleads another factual basis for finding that Rex unlawfully discriminated against her within the meaning of Title VII.

As mentioned above, to plead a Title VII discrimination claim, a litigant must plausibly allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190. Rex argues that Count Five must be dismissed because: (1) Plaintiff has not alleged any "adverse employment action" within the meaning of Title VII's antidiscrimination provision; and (2) Plaintiff does

---

[8] Even were necessity an element of Plaintiff's ADA claim that needed to be pleaded, the court would be inclined to rule that it has been pleaded by inference, since an accommodation would clearly be necessary where, without it, an employee would be required to drive while unable to see the road. *See Hall*, 846 F.3d at 765 (court must draw all reasonable inferences in the plaintiff's favor when ruling on a Rule 12(b)(6) motion).

[9] Count Five also alleges that Rex "fail[ed] to internally promote her, fail[ed] to investigate her complaints of discrimination, created an sever [sic] and pervasive work environment, retaliated against her, and violated her rights to accommodation for her disabilities" [DE-1 ¶ 109], but: (1) all of these allegations except Rex's purported failure to internally promote her are essentially duplicative of her other claims analyzed above, *see supra* Sections III(c)–(f); and (2) despite the court's best efforts, the court is unable to decipher Plaintiff's failure-to-internally-promote theory, rendering that theory implausible. *See* [DE-1 ¶¶ 57, 59, 66 (Plaintiff alleging that she was promoted internally)]; *Beaudett*, 775 F.2d at 1278 ("Principles requiring generous construction of *pro se* complaints are not, however, without limits. . . . District judges are not mind readers. Even in the case of *pro se* litigants, they cannot be expected to construct full blown claims from sentence fragments[.]").

19

not allege any similarly-situated employees outside of her protected class who were treated differently than her. [DE-23 at 15–17]

Because she does not allege that she was fired from Rex, but that she voluntarily resigned, Plaintiff's allegations regarding wrongful termination can only survive Rex's Rule 12(b)(6) motion to dismiss if she has plausibly alleged circumstances amounting to a constructive discharge. The Fourth Circuit has said that a claim for constructive discharge under Title VII has two elements: "First, a plaintiff must show that his working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign. Second, a plaintiff must actually resign because of those conditions." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 211–12 (4th Cir. 2019) (internal quotation marks and citations omitted). Because Plaintiff has alleged that she resigned because of the action plan eliminating her remote-working accommodation [DE-1 ¶¶ 73–76], the question is whether the plan created objectively-intolerable working conditions.

The pleading threshold for intolerability is high: "intolerability is assessed by the objective standard of whether a reasonable person . . . would have had no choice but to resign[,]" and "difficult or unpleasant working conditions . . . without more, are not so intolerable as to compel a reasonable person to resign[.]" *Perkins*, 936 F.3d at 212 (internal quotation marks and citations omitted). But drawing all reasonable inferences in Plaintiff's favor as required at this stage, *Hall*, 846 F.3d at 765—and because Rex has not directed the court's attention to any authority holding otherwise—the court would be inclined to conclude that Plaintiff's allegations regarding her night blindness render plausible her allegations that she was constructively discharged by the action plan, because it is plausible that a reasonable person in Plaintiff's position would feel that having to drive while unable to see creates such danger that they had no choice but to resign to avoid the danger.

20

But Plaintiff's discrimination claim founders for lack of any allegations that similarly-situated employees who were not African-American were treated differently, i.e., were allowed to continue to work remotely when Plaintiff's action plan took away her ability to do so. The only allegation regarding a Rex employee other than Plaintiff's supervisors that overlaps with the allegations concerning the circumstances of Plaintiff's resignation is that Rex "took away [Plaintiff's] responsibilities of training employees and gave them those responsibilities [sic] to white co-coworker [sic] Molly Hutchinson Moore[.]" [DE-1 ¶ 69] But other than her race, the only other information alleged within the complaint about Moore is that Moore was "promoted in December 2018 timeframe to a Lead Coordinator Position, she received trained [sic] by Defendants[.]" [DE-1 ¶ 62] Because Plaintiff does not allege that Moore was allowed to work remotely when she was not—indeed, because the complaint makes no allegations regarding any other Rex employee's ability to work remotely—Count Five fails to plausibly allege a 42 U.S.C. § 2000e-2(a) Title VII constructive-discharge claim, and must be dismissed pursuant to Rule 12(b)(6).

21

## IV.    Conclusion

For the foregoing reasons, the court concludes that: (1) Defendants' motion to dismiss all claims brought against Defendants other than Rex is GRANTED; and, regarding the remaining claims brought against Rex only, (2) Defendants' motion to dismiss Counts One, Two, and Five is GRANTED; (3) Defendants' motion to dismiss Count Three is DENIED; and (4) Defendants' motion to dismiss Count Four is DENIED as to Plaintiff's night-blindness theory only and is otherwise GRANTED. Plaintiff is GRANTED LEAVE to file an amended complaint alleging how she complied with Title VII and the ADA's administrative regimes, including the date that she received the right-to-sue letter, as well as to file affidavits in support.

SO ORDERED this the ____13th____ day of ____August____, 2021.

_____
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE